**ALLEN M. CAMPBELL COMPANY GENERAL CONTRACTORS, INC.,** Defendant-Appellant,

v.

**LLOYD WOOD CONSTRUCTION CO.,** Inc., Plaintiff-Appellee,

and

Hilary J. Sandoval et al., Defendant-Appellee.

No. 30518
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 9, 1971.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of

New York et al., 5 Cir., 1970, 431 F.2d 409.

Luther P. House, Jr., Aubrey L. Coleman, Jr., Smith, Currie & Hancock, Atlanta, Ga., for defendant-appellant.

Olin Zeanah, Zeanah, Donald & Lee, Tuscaloosa, Ala., for plaintiff-appellee.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Alan S. Rosenthal, Michael C. Farrar, Attys., Dept. of Justice, Washington, D. C., L. Patrick Gray, III, Asst. Atty. Gen., Washington, D. C., for the federal appellees.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

We deal here with a judicial challenge to administrative action—more precisely, with an order of the District Court invalidating a Small Business Administration (SBA) size determination. After carefully reviewing the record and dispelling the aura of confusion that enshrouds this case, we have concluded that the judgment must be reversed.

The facts are largely undisputed. The Allen M. Campbell Company was the low bidder on a government contract set aside under the Small Business Act[1] for the construction of Air Force housing in Florida. Lloyd Wood Construction Company, the second lowest bidder, protested the award on the theory that Campbell was not a "small business" under applicable SBA size standards[2] because its receipts had been computed under a "completed contracts" rather than a cash accounting method. The SBA Area Administrator rejected this contention and the Size Appeals Board[3] affirmed, explicitly holding that Campbell's receipts "do not exceed the $7.5 million size stand-ard" and implicitly adopting the earlier size appeals decision in *Pierre Aircon Co.* [No. 130, March 1, 1965] which found the "completed contracts" accounting method "acceptable under the applicable definition of a small business concern," App. pp. 183, 287–88.[4]

Before the Air Force and Campbell could sign the contract Wood filed suit in the District Court against Campbell, the Air Force contracting officer, and the Administrator of the Small Business Administration, seeking declaratory relief voiding the size determination and injunctive relief against the award to Campbell. The Air Force withheld action pending a judicial decision.

Following a hearing the Trial Court held that although neither the Air Force nor the SBA could be enjoined the award to Campbell was erroneous as a matter of law because the "completed contracts" method was unacceptable for size computation. The award to Campbell was set aside, but there was no order redirecting it to anyone else. Faced with a critical housing shortage, the Air Force revoked its initial award and gave the contract to Wood. Construction is now substantially completed.

Our decision must necessarily be influenced by the declared Congressional policy embodied in the Small Business Act to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise." 15

---

1. 15 U.S.C.A. § 631 et seq.

2. The regulations provide that a business is "small if its average annual receipts for its preceding three (3) fiscal years do not exceed $7½ million." 13 C.F.R. § 121.3–8 (a) (1) (1970). Both parties agree that Campbell is not within the size limitation if a cash accounting method is used.

3. "(a) *Organization.* The Size Appeals Board shall review appeals from size determinations * * * and shall make recommendations to the Administrator whether such determinations * * * should be affirmed, reversed or modified. The Size Appeals Board shall conduct such proceedings as it determines ap-propriate to enable it to discharge its duties.
    (1) The Size Appeals Board shall consist of four members; to wit: The Deputy Administrator (Chairman), the Associate Administrator for Procurement and Management Assistance, the Associate Administrator for Financial Assistance, and the Assistant Administrator for Planning, Research and Analysis."
13 C.F.R. § 121.3–6 (1970).

4. Previous practice also permitted a size computation utilizing a "percentage of completion" accounting method. See Bonwit Building Corp. [No. 145, May 25, 1965], App. pp. 289, 293.

U.S.C.A. § 631. This broad aim is supplemented by programs providing for special financing through Small Business Investment Companies, 15 U.S.C.A. § 661 et seq. and preferred tax treatment for small business corporations, 26 U.S.C.A. § 1371 et seq. Inherent in the statutory plan is a legislative aim to provide small businesses with significant competitive advantages not available to others, as indicated by the Administrator's authority to insure that small businesses receive *any* award or contract or *any* part thereof after determining such action "to be in the interest of assuring that a fair proportion of the total purchases and contracts for property and services for the Government are placed with small-business concerns," 15 U.S.C.A. § 644(3). The preferred treatment accorded to small businesses under the Act and the latitude given the Administrator to to achieve it are thus primary components in our analysis.

■ Initially we reject Wood's motion to dismiss the appeal on grounds of mootness. Despite the fact that construction is well underway, the question of whether the initial award was rightly or wrongly set aside still has substantial significance for the rights and liabilities of the parties, including Campbell's suit for bid preparation costs now pending in the Court of Claims. Also, there is still the hypothetical (but admittedly unlikely) possibility that the Air Force will terminate the contract with Wood and re-award the project to Campbell.

■ In considering the merits of the controversy, we need not directly confront the still unsettled problem of whether a disappointed bidder on a government contract has standing to sue the contracting agency (e. g., the Air Force) for injunctive relief.[5] The Small Business Administration's regulations provide a detailed and comprehensive procedure by which an aggrieved bidder and others can administratively contest a size determination. This is an elaborate structure which takes into account the privileges accorded to a "small business" and the decisive consequence of a size determination not only on competing "small" businesses but "large" ones not qualifying as "small" under the standards.[6] Whatever vestigial restrictions the standing doctrine may impose in government procurement cases generally, they cannot be twisted to preclude judicial review in this context, though court intrusion may be circumspect and infrequent. All we decide is that, although Wood had standing to challenge the size determination, there was a substantial basis in the record to support the Small Business Administration's initial decision and the District Court was in error when it found otherwise.

From the statute itself we learn nothing about size standards because a small business is defined only as one "independently owned and operated and which is not dominant in its field of operation," 15 U.S.C.A. § 632. However, the Administrator is empowered to effectuate

5. Clearly the momentum of recent Supreme Court decisions is in the direction of finding standing whenever "the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise" and that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, Inc. v. Camp, 1970, 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed. 2d 184, 187–188; Barlow v. Collins, 1970, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192; cf. Flast v. Cohen, 1968, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. The Court of Appeals for the District of Co-

lumbia has already given standing to sue to disappointed bidders on government contracts. Scanwell Laboratories, Inc. v. Shaffer, 1970, 137 U.S.App.D.C. 371, 424 F.2d 859. However, in light of the contrary holding in Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108, denying a government contractor's standing to challenge the Secretary of Labor's minimum wage determination under the Walsh-Healey Act and never judicially overruled or even mentioned by the Supreme Court in recent standing decisions, we assume without deciding that the question in other contexts is an open one.

6. 13 C.F.R. § 121.3–5 (1970).

Congressional policy by making "such rules and regulations as he deems necessary to carry out the authority vested in him by or pursuant to this chapter," 15 U.S.C.A. § 634(b) (6). The specific determination of which businesses are to be the beneficiaries of the Act is thus primarily committed by the legislative branch to the administrative agency.

■■ Of course, once having exercised this broad rule-making authority, the agency cannot thereafter arbitrarily construe or apply its rules in a manner inconsistent with fundamental procedural fairness. Greene v. McElroy, 360 U.S. 474, 507–508, 79 S.Ct. 1400, 1419, 3 L. Ed.2d 1377, 1397. But it is an axiom of judicial review that an administrative agency's interpretation of its own regulations must be accorded the greatest deference. Udall v. Tallman, 1965, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, reh. denied, 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283; Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702. When, as here, that interpretation obviously incorporates quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme,[7] judges should be particularly reluctant to substitute their personal assessment of the meaning of a regulation for the considered judgment of the agency.[8] If the agency interpretation is merely one of several reasonable alternatives, it must stand even though it may not appear as reasonable as some other.

■ Here the District Court analysed extensively the accounting practices permitted under the Internal Revenue Code and concluded that calculations permissible in computing taxable income were not acceptable for size computations under the Small Business Act. However, there is no indication that in giving the Administration this broad responsibility and authority, the Congress had in mind constricting its regulator-enforcer to particular accounting theories to the exclusion of others. Courts have not demonstrated any great competence in either discerning or applying the sometimes esoteric mysteries of this profession. It is better left to those having, or thought to have, a business-experience-oriented expertise.

The Small Business Administration, applying its own rules and following a long-established practice, twice found Campbell to have satisfied the size requirement based upon a "completed contracts" accounting method. Under the circumstances this was conclusive of the issue.

The upshot is that the judgment of the District Court must be reversed and the cause remanded for entry of judgment for the defendants and such further consistent relief as might be appropriate.

Reversed and remanded.

---

7. The pragmatic nature of the inquiry—what is a small business?—is shown by the professional specializations of those comprising the Size Appeals Board. See note 3, *supra*.

8. Prior to the initiation of this suit there was no specific SBA rule prescribing permissible accounting methods for size determinations. Following the District Court's decision the Administration amended its regulations to define the term "annual receipts" as "the gross income

* * * of a concern * * * as entered on its regular books of account for its most recently completed fiscal year (whether on a cash, accrual, completed contracts, percentage of completion, or other acceptable accounting basis) and reported or to be reported * * * for Federal income tax purposes." 35 Fed. Reg. 19077 (1970). This amendment merely reinforces our conviction that the agency's original interpretation was a reasonable one.